# Durie Tangri

Daralyn J. Durie
415-362-6666 (main)
ddurie@durietangri.com

September 15, 2014

**VIA ECF**

The Honorable Joseph F. Bianco
United States District Judge
United States District Court for the Eastern District of New York
100 Federal Plaza, Ctrm. 920
Central Islip, NY 11722

*Re:   EasyWeb Innovations, LLC v. Twitter, Inc.,*
       *Civil Action No. 2:11-cv-04550-JFB-WDW*

Your Honor:

On July 3, 2014, the parties submitted letters addressing the impact of the Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  Since that time, the Federal Circuit and a number of district courts have issued opinions interpreting *Alice*.  We write to inform the Court of those additional authorities, which bear on the pending motions for summary judgment.

In three Federal Circuit cases and seven district court cases since *Alice*, the patent at issue has been held invalid under § 101.[1]  These ten cases are summarized below.

1.     ***Digitech Image Techs. v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014).**

In *Digitech*, the Federal Circuit held a patent relating to digital image processing invalid under § 101.  Specifically, the court held that the patent at issue "claims an abstract idea because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine."  *Id.* at *4.  The court held that "[w]ithout additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not

---

[1] Two additional § 101 opinions are not relevant to the issues before the Court.  One district court rejected the defendant's § 101 argument that a patent on tools for forming sheet metal into automobile parts was drawn to an abstract idea.  *AutoForm Eng'g GMBH v. Eng'g Tech. Associates, Inc.*, 10-14141, 2014 WL 4385855 (E.D. Mich. Sept. 5, 2014).  And one district court invalidated a patent under § 101 on the ground that the patent was drawn to an unpatentable law of nature, and did not reach the question whether the patent was invalid for claiming an abstract idea.  *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, CV 12-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014).

The Honorable Joseph F. Bianco
September 15, 2014
Page 2

patent eligible." *Id.* at *5.  Thus, because the patent claims were "so abstract and sweeping as to cover any and all uses of a device profile," *id.* (quotation omitted), both the apparatus and the method claims of the patent were invalid under § 101.

**2.      *BuySafe, Inc. v. Google Inc.*, __ F.3d __, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014).**

In *BuySafe*, the Federal Circuit held invalid under § 101 a patent "directed to creating familiar commercial arrangements by use of computers and networks." *Id.* at *1.  The claims were directed to creating a contractual relationship—specifically, a "transaction performance guaranty"—"that is beyond question of ancient lineage." *Id.* at *4.  That the well-known method was performed using an arrangement of computers did not render this idea patentable:

> The computer functionality is generic—indeed, quite limited: a computer receives a request for a guarantee and transmits an offer of guarantee in return. There is no further detail. That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive. The computers in *Alice* were receiving and sending information over networks connecting the intermediary to the other institutions involved, and the Court found the claimed role of the computers insufficient. *See also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) (use of Internet to verify credit-card transaction does not add enough to abstract idea of verifying the transaction). And it likewise cannot be enough that the transactions being guaranteed are themselves online transactions. At best, that narrowing is an "attempt[ ] to limit the use" of the abstract guarantee idea "to a particular technological environment," which has long been held insufficient to save a claim in this context.

*Id.* at *5.

**3.      *Planet Bingo LLC v. VKGS LLC*, ___ Fed. Appx. ___, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014).**

In *Planet Bingo*, the Federal Circuit held invalid a patent for a computerized system for managing the game of Bingo.  "Claim 7 of the '646 patent, for example, recites the steps of selecting, storing, and retrieving two sets of numbers, assigning a player identifier and a control number, and then comparing a winning set of bingo numbers with a selected set of bingo numbers." *Id.* at *2.  The court held the claims invalid under § 101 because "not only can these steps be carried out in existing computers long in use, but they also can be done mentally." *Id.* (quotation omitted).

The patentee argued that the claimed method could not be carried out without a specialized computer because of the volume of data that would need to be processed to handle "thousands, if not millions" of Bingo transactions at once.  The court rejected that argument, because the claims did not require that the system was able to handle thousands or millions of Bingo transactions at once. *Id.*

Nor were the claims rendered patentable because they recited computer functions like storing or comparing data:  The Court held that because "the claims recite a program that is used for the generic

The Honorable Joseph F. Bianco
September 15, 2014
Page 3

functions of storing, retrieving, and verifying a chosen set of bingo numbers against a winning set of bingo numbers," they were directed to "purely conventional" computer functions. *Id.* at *3 (quotation omitted).

4. ***Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-cv-2826-T-23TBM (M.D. Fla. Sept. 11, 2014).***

The plaintiff in *Every Penny Counts* owned a patent claiming a method of "rounding up" or "rounding down" particular financial transactions, and placing the rounded amount in a savings account. The court held that this functionality—"regularly and frequently capturing a small and inconspicuous quantity and segregating and retaining the captured quantities until the quantities accumulate into a large quantity"— was an abstract idea. *Id.* at 9. The claims recited only conventional computer functions for implementing this abstract idea: receiving data, applying a formula, and storing data. And the computer components recited in the patent's claims—"a 'data store,' an 'information processor,' and a 'communicator'"—did not provide "a meaningful limitation beyond generally linking the use of the method to a particular technological environment." *Id.* at 11 (quotation omitted). For that reason, both the method and apparatus claims at issue were held invalid under § 101.

5. ***Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, No. 13-cv-655, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014).***

In *Loyalty Conversion Systems*, Judge Bryson of the Federal Circuit sat by designation in the Eastern District of Texas. The patent in that case claimed a method for operating a website that facilitated the exchange of one airline's frequent-flyer points for another. Judge Bryson held the claims invalid under § 101 because "they are largely functional in nature and do little more than set forth the general concept of currency exchange, as applied to loyalty awards, and then announce the use of 'one or more' computers to obtain various efficiencies in the process of converting one type of loyalty award credits into another." *Id.* at *7.

The role of the computer in the patents at issue did not render that abstract idea patentable, because that role was "limited to the basic functions of a generic computer, including storing and displaying information, performing simple arithmetic calculations, and enabling a customer to make e-commerce purchases from a vendor." *Id.* at *9. The patentee argued that the claims were drawn to a special-purpose computer able to perform the claimed functions. But where the claimed functions amount to "data recording, storage, and calculation, all of which are conventional functions that can be performed by a generic computer without any novel programming or improvement in the operation of the computer itself," the court held, their inclusion does not save the claims from invalidity under § 101. *Id.* at 10.

6. ***Walker Digital v. Google Inc.*, No. 11-318-LPS, 2014 WL 4365245 (D. Del. Sept. 3, 2014).***

In *Walker Digital*, Judge Stark invalidated a patent directed to a computerized method for receiving, processing, and comparing data related to people. Google argued, and Judge Stark agreed, that the patent was directed to "the abstract idea of a controlled exchange of information about people." *Id.* at

The Honorable Joseph F. Bianco
September 15, 2014
Page 4

*4.  "[T]he claim limitations simply lay out an interaction whereby two parties share a series of demands with a third party, where one of the demands of both parties is that the parties' identities remain anonymous unless and until there is at least some overlap between the demands and requirements of the two parties."  The claims were held to be invalid under § 101 even where the claims recited the computer functions of "receiving," "storing," and "processing" to determine whether data satisfies a particular "search criterion," because, the court held, those types of computer functions do not render an abstract idea patentable.  *Id.* at *7.

**7.      *Tuxis Techs., Inc. v. Amazon.com, Inc.*, 2014 WL 4382446 (D. Del. Sept. 3, 2014).**

*Tuxis Technologies* dealt with a patent on a method of upselling—using information about a product the user is interested in to identify another product the user might want to buy.  *Id.* at *1.  The patentee argued that the patent claims included meaningful limitations restricting that idea to a particular application.  Judge Andrews rejected that contention, holding that because the claimed invention could be performed manually and "[t]he computer performs nothing more than purely conventional steps that are well-understood, routine, and previously known to the industry," the claims were invalid under § 101.  *Id.* at *5.

**8.      *Eclipse IP LLC v. McKinley Equip. Corp.*, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014).**

In *Eclipse IP*, Judge Wu of the Central District of California held the patent-in-suit invalid under § 101 on a motion to dismiss:

> The claims are directed to the abstract idea of asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else. The claims also direct that the method be performed "in connection with a computer system." There are likely a myriad number of ways to do so, and the '681 Patent preempts them all. The claims capture that broad scope without any "inventive concept" or other limiting principle. Of course, the computers used to implement the idea will have to be "specially programmed" to carry out the instructions. But that is true of all computer-implemented inventions.

*Id.* at *7.

**9.      *Comcast Comm. IP Holdings I, LLC v. Sprint Comm'ns Co.*, 2014 WL 3542055 (D. Del. July 16, 2014).**

In *Comcast*, Judge Andrews of the District of Delaware held that a patent for a method of optimizing a telephony network was invalid under § 101.  The court held "that the abstract idea at the heart of the claim is the very concept of a decision":

> Claim 21 merely covers the application of what has for a long time been conducted solely in the mind to modern, computerized, telephony networks. For instance, rather than an "application" requesting "service," we can think of a "person" requesting a "telephone call." The "person"

The Honorable Joseph F. Bianco
September 15, 2014
Page 5

makes a request through a telephone operator. The operator then looks to a "telephony parameter" associated with that request. Let us assume that the parameter is whether the call is "collect" or whether it is a standard call. If the call is a standard call, the operator puts it through without a user prompt. If the call is collect, the operator "determines" that the recipient will be asked to accept the charges. The operator has "determined" whether a "request" requires "acceptance of a user prompt." The only difference is the identity of the requester. Here, the generic references to a telephony network and an application are not sufficient to render the claim patentable.

*Id.* at *5.

**10.     *DietGoal Innovations, LLC v. Bravo Media, LLC*, 2014 WL 3582914 (S.D.N.Y. July 8, 2014).**

In *DietGoal*, Judge Engelmayer of the Southern District of New York invalidated a patent for "a system of computerized meal planning" under § 101. The "conventional and quotidian tasks" of comparing foods with particular nutritional goals and calculating the dietary impact of substitute foods were held to be ones that could be performed "without the aid of any particular or structured method and without the need of any technology." *Id.* at 10.  While the patentee argued that the computer apparatus described in the claims was "highly particularized," the court disagreed, holding that the claimed method could be "carried out in existing computers long in use, no new machinery being necessary." *Id.* at *14.  The claimed computer elements, the court held, "do nothing to 'transform' the nature of the claim from the mental process of meal planning into a novel method or unique application of that idea, and thus are insufficient to render the claims of the '516 Patent patent-eligible." *Id.*

We appreciate the Court's attention to these additional authorities.

Respectfully submitted,

*/s/ Daralyn J. Durie*

Daralyn J. Durie

cc:     All counsel (via ECF)